Filed 9/18/15  P. v. Maravilla CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MICHAEL MARAVILLA,<br><br>    Defendant and Appellant. | D066663<br><br><br><br>(Super. Ct. No. SCD254262) |

APPEAL from a judgment of the Superior Court of San Diego County, David M. Rubin; Timothy R. Walsh, Judges.  Affirmed.

Roland Haddad and Brian Kennedy for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Senior Assistant Attorney General, Melissa Mandel and Laura Baggett, Deputy Attorneys General, for Plaintiff and Respondent.

In this appeal, Michael Maravilla challenges the trial court's denial of his motion to suppress evidence based on his claim that he was unlawfully detained by the police.

We find the police had reasonable suspicion to detain him, and accordingly affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On February 19, 2014, defendant was arrested near the scene of an attempted residential burglary after being identified by the victim at a curbside lineup. Subsequent investigation, including defendant's admissions, tied him to numerous other residential burglaries. He was subsequently charged with the February attempted burglary, plus 11 counts of residential burglary and one count each of vehicular burglary, receiving stolen property, and possession of a controlled substance. The offenses occurred in 2013 and 2014 and involved numerous different victims.

Defendant filed a motion to suppress the evidence supporting the charges based on a claim that his detention on February 19, 2014, was not supported by the required reasonable suspicion that he had committed a crime. After the trial court denied the suppression motion, defendant pled guilty as charged, and the court sentenced him to 10 years in prison. Pursuant to the terms of the plea agreement, defendant retained his right to challenge the denial of the suppression motion on appeal.

*The Suppression Hearing*

In opposition to the suppression motion, the prosecution called Officer Christopher Pavle to describe the circumstances surrounding defendant's detention.[1]

---

[1] Officer Pavle testified at the preliminary hearing and at the hearing on the suppression motion. The parties stipulated the preliminary hearing testimony could be considered for purposes of the suppression motion.

At about 10:30 a.m. on February 19, 2014, Officer Pavle was dispatched to respond to a report of a residential burglary. When Officer Pavle arrived at the scene, the victim reported that he had returned home and noticed the side gate to his yard was ajar, which was highly unusual. When the victim "peeked around" the corner of his house, he saw a man sitting in his backyard drinking a beer. The victim and the man "made eye contact," and the man then dropped the beer, picked up a backpack, and ran into a canyon. When inspecting the area, Officer Pavle saw that the window screens were removed from the back windows of the house and there were signs of attempted entry at the windows, including "a drill and several holes in the window frame." The victim described the suspect as "a Hispanic male wearing a gray sweatshirt, dark pants, approximately 5-10, average build, goatee."

While speaking to the victim and various neighbors outside the victim's residence, Officer Pavle saw a man driving a black Ford F150 truck pass the residence going northbound into the cul-de-sac. There were no passengers in the truck. The neighbors told Pavle that the truck "did not belong in the area," and Pavle knew that the canyon into which the suspect had fled could be accessed at the end of the cul-de-sac.

Officer Pavle continued conversing with the victim and the neighbors, and then got into his patrol vehicle. About 15 to 20 minutes after seeing the truck driving by, he began driving his patrol vehicle northbound on the cul-de-sac in the direction the truck had gone. As he was driving, he saw the truck returning southbound on the street from the terminus of the cul-de-sac, this time with a passenger (later identified as defendant). The passenger had dark hair and a goatee, and he resembled a male of "Hispanic

3

descent." Pavle assessed that he "matched the description of the suspect . . . almost to a 'T' with the exception of the gray hooded sweatshirt."[2] Pavle also noticed the passenger's reaction to his presence, explaining: "We made direct eye contact"; "He gave me that look. His eyes went wide open and tracked my movement"; "We tracked each other as we passed each other. He followed me, I followed him with [my] eyes"; "His eyes opened up real wide. As I tracked past him, he tracked my police vehicle"; "We made eye contact and followed each other's movement. He followed my patrol car as I turned and followed his truck." Officer Pavle opined that this response to an officer's presence was "not normal."

Officer Pavle made an immediate U-turn; activated his overhead lights and sirens; and initiated a "traffic stop" of the truck. As the passenger exited the truck in response to Pavle's directions, the victim "began to scream and yell that that was the guy that was in [his] backyard." The victim again identified defendant at a curbside lineup, stating: "that's the guy who was in my backyard. He changed his shirt, but the pants are the same. The facial hair is the same. Height and weight are the same. That's him 100 percent."

Denying the suppression motion, the trial court found the police had a reasonable suspicion to stop the truck based on the attempted burglary report, the victim's

---

2      Officer Pavle apparently did not observe the passenger's clothing as the truck was passing, except that he was not wearing a gray sweatshirt. After defendant's detention, the police reported he was wearing a black shirt and brown pants. When questioned about his observations of the passenger's ethnicity as the truck was passing, Pavle testified the passenger resembled a male of "Hispanic descent"; his skin color could have been "brown," "white," "Caucasian," or "tanned"; he was not a "dark black male"; and he "could have been a light-skinned Hispanic."

4

description of the suspect, and the temporal and spatial proximity between the crime and the stop.

## DISCUSSION

To satisfy Fourth Amendment reasonableness requirements, a detention must be based on a reasonable suspicion, meaning specific and articulable facts known to the officer that would cause a reasonable officer in a like position, drawing on the officer's training and experience, to believe the person detained may be involved in criminal activity. (*People v. Souza* (1994) 9 Cal.4th 224, 230-231; *In re Tony C*. (1978) 21 Cal.3d 888, 893.) Reasonable suspicion is something more than an inchoate and unparticularized suspicion or hunch, but something less than the fair probability required for probable cause. (*People v. Bennett* (1998) 17 Cal.4th 373, 387.)

The "reasonable suspicion standard . . . is not a particularly demanding one, but is, instead, 'considerably less than proof of wrongdoing by a preponderance of the evidence.' " (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 146.) The courts consider the totality of the circumstances to determine whether there was a particularized and objective basis for the officer's suspicion. (*People v. Souza, supra*, 9 Cal.4th at p. 230.) Even if the circumstances are consistent with innocent as well as criminal activity, the police may properly detain an individual to resolve the ambiguity; i.e., " 'to quickly determine whether they should allow the suspect to go about his business or hold him to answer charges.' " (*In re Tony C., supra*, 21 Cal.3d at p. 894; *Letner and Tobin, supra*, at pp. 146-147.) "What is required is not the *absence* of innocent explanation, but the *existence* of 'specific and articulable facts which, taken together with rational inferences

5

from those facts, reasonably warrant that intrusion.' " (*People v. Glaser* (1995) 11 Cal.4th 354, 373.)

On appeal, we defer to the trial court's express or implied factual findings if supported by substantial evidence, and then independently determine whether the search or seizure was reasonable under the Fourth Amendment. (*People v. Glaser, supra*, 11 Cal.4th at p. 362.)

Defendant argues the record does not show a reasonable suspicion that he was engaged in criminal activity, but at most shows a mere unparticularized suspicion or hunch. The contention is unavailing.

Shortly after the attempted residential burglary on the cul-de-sac, Officer Pavle observed a truck with no passengers driving into the cul-de-sac, and cul-de-sac residents told him the truck was not from the neighborhood. About 15 to 20 minutes later, Pavle saw this truck driving back out of the cul-de-sac, this time with a passenger (defendant). Pavle had been told the attempted burglary suspect had fled to a canyon, and he knew the truck had been driving in a direction where the canyon could be accessed at the end of the cul-de-sac. When defendant passed Pavle in the truck as a passenger on the way out of the cul-de-sac, Pavle saw that his appearance generally matched the victim's description of the suspect—i.e., a Hispanic-appearing male with a goatee. Further, Pavle observed defendant's eyes widening and tracking him in the patrol vehicle.

Considering all these circumstances together, they create a reasonable suspicion that defendant was the attempted burglary suspect so as to justify an investigative detention. The officer saw defendant leaving the neighborhood of the crime shortly after

its occurrence, and defendant generally matched the description provided by the victim. Defendant was in a vehicle that was not recognized by cul-de-sac residents, that had entered the cul-de-sac with no passengers and that was exiting with defendant as a passenger, and that had traveled in a direction allowing retrieval of the fleeing suspect at the canyon area. Also, defendant's demeanor as he passed by the officer reflected that he was acutely aware of the officer's presence, which could suggest he was concerned about apprehension. Contrary to defendant's claim, these circumstances constitute more than an unparticularized suspicion or hunch and satisfy the particularized factual basis required for a detention based on reasonable suspicion.

The trial court did not err in denying the suppression motion.

DISPOSITION

The judgment is affirmed.


HALLER, J.

WE CONCUR:


NARES, Acting P. J.


IRION, J.


7